IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL REED, | No. 4:23-CV-00890 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| MOUNT CARMEL AREA SCHOOL DISTRICT, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**OCTOBER 3, 2023**

This case involves a disturbing yet all-too-common pattern of abuse in schools today: hazing. After suffering a violent sexual assault as part of his high school football team's hazing practices, Plaintiff seeks to recover compensation for his emotional distress through Title IX, and to sue his school district for its negligence under state tort law. Unfortunately, neither of these remedies are this Court's to give, and neither is permitted under Federal or State law.

**I.    BACKGROUND**

In May 2023, Michael Reed filed a 15-count complaint against various Defendants.[1] Six of those counts are directed toward the moving Defendant, Mount Carmel Area School District ("Mount Carmel").  Under Count I, Reed seeks

---

[1]   Complaint, Doc. 1.

compensatory and punitive damages, including emotional distress damages, under Title IX's private right of action.[2] The remaining five counts seek damages through various flavors of state tort law.[3] This Court has subject matter jurisdiction over Reed's Title IX claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Reed's state claims pursuant to 28 U.S.C. § 1367.

In June 2023, Mount Carmel filed a motion for partial dismissal of Reed's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and a Brief in Support of its motion.[4] Reed filed a Brief in Opposition in July 2023,[5] and Mount Carmel filed a Reply in August 2023.[6] The motion is now ripe for disposition; for the reasons that follow, it is granted and these claims are dismissed with prejudice.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be

---

[2] *Id.* ¶
[3] Count II alleges negligence; Count IV alleges negligent failure to rescue; Count V alleges failure to warn; Count VI alleges negligence per se; and Count VII alleges negligent infliction of emotional distress. *Id.* at 20, 26, 27, 28, 29.
[4] Defendant Mount Carmel Area School District's Motion for Partial Dismissal of Complaint, Doc. 14; Defendant Mount Carmel Area School District's Brief in Support of Motion for Partial Dismissal of Complaint, Doc. 15.
[5] Plaintiff Michael Reed's Response in Opposition to Defendant Mount Carmel Area School District's Motion for Partial Dismissal of Plaintiff's Complaint, Doc. 16-1.
[6] Defendant Mount Carmel Area School District's Reply Brief in Further Support of Motion for Partial Dismissal of Complaint, Doc. 18.

granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[7] and *Ashcroft v. Iqbal*,[8] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[10]

### B. Facts Alleged in the Complaint

This motion concerns what remedies are available against a public school district due to a hazing incident which escalated to a violent sexual assault. The facts alleged in the complaint, which this Court must accept as true for the purposes of this motion, are as follows.

In the fall of 2020, Plaintiff Michael Reed was a seventeen-year-old student at Mount Carmel Area High School and a member of the Mount Carmel football

---

[7] 550 U.S. 544 (2007).
[8] 556 U.S. 662 (2009).
[9] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[10] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

team.[11] During the football season, members of the Mount Carmel Area High School football team and their parents would gather at a player's house to celebrate the previous week's football game by watching a recording on television.[12] During the 2020 football season, several gatherings were hosted by team captain Reed Witkoski.[13] Until his senior year at Mount Carmel, Reed had never attended one of these gatherings, as only starters on the team were invited.[14] When Reed became a starter for Mount Carmel's football team that year,[15] Witkoski invited him to one such gathering in September 2020.[16]

On that day, Reed arrived at the Witkoski residence at approximately 6:30 P.M. and sat down with other players to watch the game at 7:00 P.M.[17] Approximately twenty team members were in attendance.[18] At halftime, while Witkoski's parents were inside the home, Witkoski instructed the team members to move to his backyard.[19] Reed saw another player carrying a pack of sparklers.[20] He then saw Witkoski, along with team co-captains Damon Dowkus and Julien Stellar, holding punks, which are smoldering sticks used to light fireworks.[21]

---

[11] Doc. 1 ¶¶29, 30.
[12] *Id.* ¶31.
[13] *Id.* ¶38.
[14] *Id.* ¶31.
[15] *Id.* ¶32.
[16] *Id.* ¶32.
[17] *Id.* ¶37.
[18] *Id.*
[19] *Id.* ¶38.
[20] *Id.*
[21] *Id.*

Reed, along with other new starters on the team, was then forced to pull down his pants.[22] Other team members held him down.[23] While Reed was physically restrained, the three team captains, along with team member Tyler Owens, used the punks and sparklers to burn Reed's buttocks eight to ten times.[24] While Reed was burned, "other members of the team watched and laughed."[25] After the assault Witkoski told the players: "What happens here, stays here. Don't say anything."[26]

Unbeknownst to Reed, the Mount Carmel football team had engaged in hazing and bulling traditions for many years, which were meant to "initiate" them as starters to the team.[27] Just one week before Reed's incident, approximately five to ten Mount Carmel football players were hazed in the same manner at the Witkoski residence.[28] Additionally, one student experienced a "similar hazing-type assault" in the school locker room the year prior to Reed's assault, after attempting to report similar hazing to the school.[29] These practices were allegedly known to Mount Carmel, which failed to act upon reports of abuse.[30] Reed and his mother described the incident and provided pictures of Reed's burns to Mount Carmel, but feared that Reed would be

---

[22] *Id.* ¶39.
[23] *Id.* ¶39.
[24] *Id.* ¶¶39-40.
[25] *Id.* ¶40.
[26] *Id.* ¶44; Francis Scarcella, *UPDATE: Mt. Carmel's Football Coach Reports Alleged Hazing to ChildLine*, THE DAILY ITEM, Dec. 12, 2022, Doc.1-2 at 4.
[27] *Id.* ¶23.
[28] *Id.* ¶48.
[29] *Id.* ¶¶25, 53.
[30] *Id.* ¶62.

retaliated against if he spoke out.[31] Mount Carmel stated that nothing could be done absent a written statement; the school took no further action.[32]

The Office of the Attorney General of Pennsylvania then investigated the hazing incident, concluding that the practice of burning players' buttocks had been going on for many years before Reed's assault.[33] Several players were charged with various crimes, including Simple Assault, Intimidation of Witness or Victims, Criminal Conspiracy, and Hazing; Several students including Witkoski, Dowkus, Stellar, and Owens were criminally charged, and each pled nolo contendere or guilty to one of various charges.[34] Mount Carmel canceled the football season.[35]

Reed now brings civil charges against several defendants, including Mount Carmel, Witkoski and his parents, Dowkus, Stellar, Owens, and other unknown defendants.[36] Count I seeks compensatory, punitive, and emotional distress damages from Mount Carmel under Title IX.[37] Counts II, IV, V, VI, and VII are state law negligence claims against Mount Carmel.[38]

---

[31] *Id.* ¶¶53-55, 57.
[32] *Id.* ¶¶57-58, 60.
[33] *Id.* ¶¶ 59, 61
[34] *Id.* ¶63-65; *Mount Carmel Football Players Waive Hearing, Possibly Headed to Trial in Hazing Case*, WNEP (Jan. 19, 2023), Doc. 1-3.
[35] *Id.* ¶60.
[36] *Id.* at 1.
[37] *Id.* at 16-17, 19-20.
[38] Count II alleges negligence; Count IV alleges negligent failure to rescue; Count V alleges failure to warn; Count VI alleges negligence per se; and Count VII alleges negligent infliction of emotional distress. *Id.* at 20, 26, 27, 28, 29.

### C.     Reed's Punitive and Emotional Distress Damages

The Department of Education allocates billions of dollars of funding to schools around the country every year. Under Title IX of the Education Amendments of 1972, any school receiving those funds agrees not to discriminate against any person on the basis of sex.[39] This prohibited sex discrimination includes, under certain circumstances, a school's deliberate indifference toward student-on-student sexual harassment or assault.[40] Following the Supreme Court of the United States's decision in *Cannon v. University of Chicago*, Title IX provides that victims of prohibited discrimination have an implied private right of action against funding recipients for damages.[41]

*Cannon* was a continuation of the Supreme Court's expansive approach to purposively divining implied rights by "accord[ing] dispositive weight to context shorn of text"[42] to "make effective the Congressional purpose[s]" of statutes.[43] Subsequent decisions curbed this judicial overreach as an excessive intrusion into the legislative domain.[44] But after the *Cannon* decision, Congress impliedly adopted

---

[39] 20 U.S.C. § 1681.
[40] *Davis v. Monroe Cnty Bd. of Educ.*, 526 U.S. 629, 643 (1999).
[41] 441 U.S. 677, 688-89 (1979).
[42] *Alexander v. Sandoval*, 532 U.S. 275, 287-288 (2001) (Scalia, J.) (explaining this approach).
[43] *See J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964) (explaining that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose"); *Cort v. Ash*, 422 U.S. 66, 78 (1975) (providing a cabined four-factor implied rights test).
[44] *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (remedies available are those "that Congress enacted into law"); *Sandoval*, 532 U.S. at 287 ("Raising up causes of action where a

*Cannon*'s holding that a Title IX private right of action exists by referencing it in other legislation, without codifying that right of action directly.[45] The scope of available remedies under Title IX therefore remains uncertain.

Consequently, Mount Carmel does not seek dismissal of Reed's Title IX claims in their entirety, as it concedes that at least compensatory damages are available under Title IX's private right of action.[46] Instead, Mount Carmel limits its Title IX challenge to Reed's claims for punitive and emotional distress damages.[47] Reed first argues that, even if such remedies are unavailable, a motion to dismiss would be the incorrect procedural vehicle to make this finding.[48] The Court rejects this argument.[49] Alternatively, Reed does not contest the availability of punitive

---

    statute has not created them may be a proper function for common-law courts, but not for federal tribunals"); *Wisniewski v. Rodale*, 510 F.3d 294, 301 (3d Cir. 2007).

[45] *Franklin v. Gwinnett Cnty Pub. Sch.*, 503 U.S. 60, 78 (1991) (Scalia, J., Concurring).
[46] Doc. 18 at 2.
[47] *Id.*
[48] Doc. 16-1 at 8-9.
[49] The cases cited by Plaintiff rightly hold that this Court could not dismiss Plaintiff's entire Title IX claim merely because his pleadings requested an unavailable remedy alongside available ones. *Richard Roe, W.M. v. Devereux Found.*, No. 21-2655, 2023 U.S. Dist. LEXIS 5658, at *29-30 (E.D. Pa. Jan. 12, 2023). But this does not mean that the Court cannot dismiss a cause of action predicated on emotional distress, and yet leave standing that same cause of action with respect to other harms—which is precisely what Defendants request. Doc. 18 at 2; *A.T. v. Oley Valley Sch. Dist.*, No. 17-4983, 2023 U.S. Dist. LEXIS 16619, at *8 (E.D. Pa. Feb. 1, 2023) (dismissing Title IX emotional distress claim but leaving underlying Title IX claim intact).

damages, conceding that the Supreme Court has foreclosed this remedy under Title IX.[50] Accordingly, these claims are dismissed.

However, the parties contest whether emotional distress damages are available under Title IX after the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*[51] The Court is persuaded that *Cummings* bars emotional distress damages under Title IX. As such, these claims are dismissed.

In *Cummings*, the Supreme Court held that emotional distress damages are unavailable under the Rehabilitation Act of 1973 and the Patient Protection and Affordable Healthcare Act.[52] However, Chief Justice Roberts' discussion was framed not around the statutes at issue, but rather more broadly around the "four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds," Title IX among them.[53] The Supreme Court followed the practice of analyzing these funding statutes together because they all "operate based on consent: 'in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'"[54]

While funding recipients agreed to be liable under these statutes' implied causes of action, it was not foreseeable that this would engender liability for

---

[50] Doc. 16-1 at 6-7; *Banes v. Gorman*, 536 U.S. 181, 189-90 (2002).
[51] 142 S. Ct. 1562 (2022).
[52] *Id.* at 1579.
[53] *Id.* at 1549, 1579.
[54] *Id.* at 1570 (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).

emotional distress damages, which are not generally available as contract remedies.[55] Therefore, under the Rehabilitation Act—just as under Title IX—emotional distress damages were not foreseen as stipulations upon Federal funding by funding recipients, and accordingly, they are unavailable.

Reed may be correct that the Supreme Court has not technically ruled upon the availability of emotional distress damages under Title IX.[56] But he offers no persuasive reason not to follow the *Cummings* dicta. Because Chief Justice Roberts analyzed these federal funding statutes in tandem, subsequent courts have overwhelmingly applied these dicta to Title XI, including all post-*Cummings* District Court decisions within this Circuit thus far.[57]

Plaintiff's citation to the Western District of Pennsylvania's dated decision in *Dawn L. v. Greater Johnstown School District*, which permitted emotional distress damages under Title IX, is unavailing.[58] The *Dawn L.* decision reasoned using a simple syllogism premised on the funding statute contract analogy: emotional distress damages are available for contractual breach if emotional distress is a foreseeable consequence of breach, and emotional distress is a foreseeable

---

[55] *Id.* at 1571-72.
[56] Doc. 16-1 at 7.
[57] *Richard Roe, W.M. v. Devereux Found.*, No. 21-2655, 2023 U.S. Dist. LEXIS 5658, at *30 (E.D. Pa. Jan. 12, 2023); *Doe v. Moravian Coll.*, Civil No. 5:20-cv-00377-JMG, 2023 U.S. Dist. LEXIS 4027, at *27 (E.D. Pa. Jan. 20, 2023); *A.T. v. Oley Valley Sch. Dist.*, No. 17-4983, 2023 U.S. Dist. LEXIS 16619, at *6-7 (E.D. Pa. Feb. 1, 2023) (collecting cases). *See also Doe v. City of Pawtucket*, 633 F.Supp. 3d 583, 589 (D. R.I. 2022).
[58] 586 F.Supp. 2d 332, 383-84 (W.D. Pa. 2008).

consequence of civil rights violations, so emotional distress damages are a foreseeable remedy under the Title IX funding statute.[59] This was the precise rationale rejected by the Supreme Court in *Cummings* with respect to the Rehabilitation Act,[60] and Reed has identified no relevant distinction between that statute and Title IX. Nor is this Court persuaded by the minority of District Courts that have refused to apply *Cummings*' rationale to Title IX, all of which declined to provide any reasoning.[61]

This Court is also persuaded by Justice Kavanaugh's *Cummings* concurrence, which does not rely on the majority's contract analogy, but rather the Supreme Court's sharp disavowal of its implied rights jurisprudence.[62] As discussed, Title IX's private cause of action descends from the "*ancien regime*" of implied rights jurisprudence,[63] which purposively implied private causes of action without textual evidence. "Quite obviously, the search for what was Congress' *remedial* intent as to a right whose very existence Congress did not expressly acknowledge is unlikely to succeed."[64] Therefore, rather than perpetuate the legal fiction that such causes of

---

[59] *Id.*
[60] *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 162, 1572-73 (Roberts, C.J.), 1577 (Breyer, J., Dissenting).
[61] *Coleman v. Cedar Hill Indep. Sch. Dist.*, Civil Action No. 3:21-CV-2080-D, 2022 U.S.Dist. LEXIS 84015, at *10 n.2 (N.D. Tx. May 10, 2022); *Doe v. Purdue Univ.*, No. 4-18-CV-98-JEM, 2022 U.S. Dist. LEXIS 123601, at *10-11 (N.D. Ind. July 20, 2022) (Martin, M.J.)
[62] *Id.* at 1576-77 (Kavanaugh, J., Concurring).
[63] *Id.*; *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).
[64] *Franklin v. Gwinnett Cnty Pub. Sch.*, 503 U.S. 60, 76 (1991) (Scalia, J., Concurring). As Justice Scalia recognized, subsequent Congresses ratified Title IX's private cause of action through

action were actually contemplated by Congress when passing Title IX, or well-understood by funding recipients at that time, it is better to cabin those implied causes of action to their currently understood scope, and "apprise the lawmaking branch of the Federal Government that the ball, so to speak, may well now be in its court."[65]

There are valid reasons for emotional distress damages to be available to the victims of discrimination and sexual harassment—especially here. But it is Congress that attaches strings to the Federal purse. It is therefore Congress's task to attach more strings to those funds, should it choose to do so.

### D. Political Subdivision Tort Claims Act

Reed sues Mount Carmel for several claims under Pennsylvania state tort law: negligence, negligent failure to rescue, failure to warn, negligence per se, and negligent infliction of emotional distress.[66] Mount Carmel contends that these claims are barred by sovereign immunity,[67] while Reed contends that they fall under the Political Subdivision Tort Claims Act's ("PSTCA") waiver of sovereign immunity for "sexual abuse" caused by a local agency's negligence.[68] While the parties raise an issue of first impression, the Court holds that the PSTCA's sexual abuse exception

---

       amending language. This adopted the then-existing private cause of action for compensatory damages into the statutory text, but emotional distress remedies had not yet been found.
[65] *Cannon v. Univ. of Chicago*, 441 U.S. 677, 718 (1979) (Rehnquist, J., concurring).
[66] Doc. 1 at 20, 26, 27, 28, 29.
[67] Doc. 15 at 5-6.
[68] Doc. 16-1 at 9-10; 42 Pa.C.S. § 8542(b)(9) (LEXIS 2022).

to sovereign immunity is inapplicable here. Reed's state tort law claims are therefore dismissed with prejudice.

The Political Subdivision Tort Claims Act ("PSTCA") codifies the Commonwealth's sovereign immunity, providing that "no local agency shall be liable for any damages on account of any injury to a person or property by any act of the local agency or an employee thereof or any other person."[69] One of the statute's narrow waivers of sovereign immunity applies where a school's actions or omissions result in "sexual abuse."[70] "Sexual abuse" in turn cross-references various criminal statutes, including "institutional sexual assault" under 18 Pa.C.S. § 3124.2(a.2), which the parties focus on in this matter.[71] For the PSTCA's exception to apply to Reed's case through its cross reference to institutional sexual assault, Reed must show that his abusers had "direct contact with a student at a school"[72] and

---

[69] 42 Pa.C.S. § 8541 (LEXIS 2022).
[70] 42 Pa.C.S. § 8542(a) states that the exceptions in § 8542(b) permit liability against political subdivisions. 42 Pa.C.S. § 8542(b) sets out nine exceptions to PSTCA immunity, one of which is the "sexual abuse" exception under § 8542(b)(9). In turn, that section cross-references the crimes enumerated under 18 Pa.C.S. § 5551(7), which applies to the following crimes "if the victim was under 18 years of age at the time of the offense:" trafficking, 18 Pa.C.S. § 2011(b); involuntary servitude as it relates to sexual servitude, 18 Pa.C.S. § 3012; rape, 18 Pa.C.S. § 3121; statutory sexual assault, 18 Pa.C.S. § 3122.1; involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123; sexual assault, 18 Pa.C.S. §3124.1; institutional sexual assault, 18 Pa.C.S. § 3124.2; aggravated indecent assault, 18 Pa.C.S. § 3125; and incest, 18 Pa.C.S. § 4302.
[71] None of the other crimes could apply here because institutional sexual assault is the only offense which criminalizes indecent contact. *See Doe v. Williamsport Area Sch. Dist.*, No. 4:22-CV-01387, 2023 U.S. Dist. LEXIS 73835, at *30 (M.D. Pa. Apr. 27, 2023).
[72] Defendant also contends that § 3124.2(a.2) requires the assault to occur "at a school," and therefore it is inapplicable because this assault occurred outside of the school. The Court is unpersuaded by this argument, and finds that when placed in context, the phrase "at a school" merely modifies the kind of "direct contact" an actor must have with a student to fall under the statute. "A person who is a volunteer or an employee of a school or any other person who has

engaged in "indecent contact" with him. The Court resolves this case on the former inquiry.[73]

The issue before the Court is whether students in extracurricular leadership positions, such as football captains, can perpetrate institutional sexual assault under § 3124.2(a.2). Based on its analysis of the statute's text and structure, the Court concludes that they cannot.

The relevant part of § 3124.2(a.2) describes the class of actors to whom the statute applies: "a person who is a volunteer or an employee of a school or any other person who has direct contact with a student."[74] The phrase "direct contact" is further defined as "care, supervision, guidance or control."[75] Because no case law appears to further define "direct contact," the parties spar over whether a football captain exercises the kind of "care, supervision, guidance or control" which would put him in "direct contact" with students.[76] Although it appears at first glance that student leaders come into direct contact with students at a school by wielding control over their peers, the surrounding context of the statute dictates otherwise. Ultimately, this case hinges not on the phrase "direct contract," but on "any other person."

---

direct contact with a student at a school" can be criminally liable under the statute. 18 Pa.C.S. § 3124(a.2)(1) (LEXIS 2022). In other words, someone in direct contact with students at a school may commit institutional sexual assault through off-campus indecent contact.

[73] However, the Court notes its skepticism of Defendant's argument that "indecent contact" with a student cannot include so-called "indirect" contact with an object such as the sparklers and punks here.
[74] 18 Pa.C.S. § 3124(a.2)(1) (LEXIS 2022).
[75] 18 Pa.C.S. § 3124(a.2)(2)(i) (LEXIS 2022).
[76] Doc. 16-1 at 11, 13; Doc. 18 at 5.

"Slicing a statute into phrases while ignoring their contexts" is a "formula for disaster"[77] because "[t]he full body of a text contains implications that can alter the literal meaning of individual terms."[78] Rather than asking whether the Mount Carmel football captains had "direct contact" with Reed, the more precise inquiry is whether the captains qualify as "any other person who has direct contact [i.e., care, supervision, guidance or control] with a student at a school."[79] The statute lists three classes of actors who, because they have direct contact with students at a school, can be liable for institutional sexual assault: "a volunteer," "an employee," or "any other person who has direct contact."[80] "Any *other* person" references the content of the preceding two classes of actors who can commit institutional sexual assault, volunteers and employees.

The statutory canon of construction *ejusdem generis* reasons that where a general word follows the enumeration of two or more things, the general word usually applies only to persons or things of the same general kind or class specifically mentioned.[81] "Any other person" must therefore refer to persons similar

---

[77] *Herrmann v. Cencom Cable Assocs.*, 978 F.2d 978, 982 (7th Cir. 1992) (Easterbrook, J.).
[78] ANTONIN SCALIA & BRIAN A. GARNER, READING LAW 356. *See also Yates v. United States*, 574 U.S. 528, 536 (2015) (Ginsburg, J.).
[79] 18 Pa.C.S. § 3124(a.2)(1) (LEXIS 2022).
[80] *Id.*
[81] *See Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1625 (2018) (Gorsuch, J.) ("[W]here, as here, a more general term follows more specific terms in a list, the general term is usually understood to 'embrace only objects similar in nature to those objects enumerated by the preceding specific words'") (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 169 (2012).

to employees and volunteers. And, the definitions of "employee" and "volunteer" explicitly state that they "do[] not include a student employed at the school" and "do[] not include a school student."[82] Like employees and volunteers who have direct contact with a student at a school, "any other person" who has direct contact with a student at a school does not include the school students themselves.

Of course, textual canons like *ejusdem generis* are "only an instrumentality for ascertaining the correct meaning of words when there is uncertainty."[83] But § 3124(a.2)'s statutory structure confirms the inference that the same exclusion applies to volunteers, employees, and other persons alike. If "any other person" could be a student, it is unclear why the drafters of § 3142(a.2) would explicitly carve out student volunteers and employees. Indeed, any contrary reading would mean that a student volunteer or employee who comes into direct contact with his peers would be carved out under sections (a.2)(2)(ii)-(iii), yet would still fall under "any other person" under (a.2)(1). This would render those strenuous exceptions mere surplusage.[84] The plain language of the statute, then, best supports a reading that student leaders do not exert the same kind of "care, supervision, guidance or

---

[82] 18 Pa.C.S. § 3124(a.2)(2)(ii)(B), (iii) (LEXIS 2022).
[83] *United States. v. Powell*, 423 U.S. 87 (1975) (quoting *Gooch v. United States*, 297 U.S. 124, 128 (1936)).
[84] *See United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used."); *In re. J.W.B.*, 232 A.3d 689, 699 (Pa. 2000).

control" wielded by volunteers and employees, and are not considered "other persons" under the statute.

It may appear to grate against statutory purpose to conclude that student leaders do not exercise "care, supervision, guidance or control" such that they can commit "institutional sexual assault" by abusing that authority. This definition, after all, directly describes disturbing events like the abuse here. And when students abuse their authority over peers to commit hazing that rises to the level of violent sexual assault, it is not difficult to conclude that this is the kind of "sexual abuse" resulting from a school's "actions or omissions" that should fall under the PSTCA's limited waiver of sovereign immunity. Ultimately, however, § 3124.2 is a criminal statute, and it is only incorporated by reference into the Political Subdivision Tort Claims Act. Its original drafters did not have municipal liability in mind and may have had their reasons, rightly or wrongly, for not exposing students to criminal liability. If any ambiguity remains, the statute is to be "strictly construed in favor of the [criminal] defendant."[85] If the PSTCA's drafters wanted the "sexual abuse" waiver to sweep more broadly than the criminal statutes they referenced, they did not say so.

---

[85] *See* 1 Pa.C.S. §1922(b)(1) (LEXIS 2022) (explaining that penal statutes must be strictly construed); *Commonwealth v. Cousins*, 212 A.3d 34, 39 (Pa. 2019) (explaining that ambiguous penal statutes are strictly construed in favor of the defendant under the rule of lenity).

This interpretation of § 3124.2(a.2) does not diminish the very real scourge of hazing in schools. Students in leadership positions wield authority over their peers, and like any person in a position of authority, a student leader can inflict severe harm and lasting trauma if his or her authority goes unchecked. However, the drafters of the PSTCA either wanted to ensure that its waiver of sovereign immunity was narrow, or they made a glaring oversight. It is not for this Court to remedy "no matter how desirable that might be as a policy matter, or how compatible with the statute."[86] Consequently, Reed's negligence claims against Mount Carmel must be dismissed.

### III. CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(6) is granted. Leave to amend is denied. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[87] A complaint is "futile" if even, as amended, it would fail to state a claim upon which relief could be granted.[88] Reed's punitive and emotional distress damages are barred under Title IX, and the Political Subdivision Tort Claims Act bars any state law tort claim against Mount Carmel because § 3124.2(a.2) does not apply to students. Although there is a "liberal pleading philosophy of the federal rules," a court amendment should not be granted where another opportunity to plead a case would be futile.[89]

---

[86] *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).
[87] *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).
[88] *Id.*
[89] *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge